UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK GUTIERREZ, | ) NO. CV 08-5084-CBM(E) |
| Petitioner, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION OF |
| | ) UNITED STATES MAGISTRATE JUDGE |
| FERNANDO GONZALES, Warden, | ) |
| Respondent. | ) |

This Report and Recommendation is submitted to the Honorable
Consuelo B. Marshall, United States District Judge, pursuant to
28 U.S.C. section 636 and General Order 05-07 of the United States
District Court for the Central District of California.

PROCEEDINGS

On August 4, 2008, Petitioner filed a "Petition for Writ of
Habeas Corpus By a Person in State Custody," consisting of a form
Petition, a typewritten Petition, an "Addendum, etc.," and exhibits.
The Petition challenges a September 27, 2006 decision by a panel of
the California Board of Prison Terms ("Board") deeming Petitioner

1  unsuitable for parole.  Respondent filed an Answer on October 2, 2008.
2  Petitioner filed a Traverse on October 27, 2008.

3

4                              **BACKGROUND**

5

6      In 1998, a jury found Petitioner guilty of kidnapping to commit
7  robbery, robbery and possession of a firearm by an ex-felon (Form
8  Petition, p. 2; Typewritten Petition, pp. 2-3; Petition, Ex. B).  The
9  jury found true the allegations that Petitioner personally used a
10  deadly or dangerous weapon, a knife, in the commission of the offenses
11  (Form Petition, p. 2; Typewritten Petition, p. 3).  Petitioner
12  received a sentence of life with the possibility of parole, plus one
13  year and eight months (Typewritten Petition, p. 3).

14

15      On August 10, 2005, Petitioner appeared before the Board for his
16  initial parole consideration hearing (Petition, Ex. H).  The Board
17  denied parole for one year (id., pp. 93-99).  On September 27, 2006,
18  Petitioner appeared before the Board for a subsequent parole hearing
19  (Typewritten Petition, p. 6; Petition, Ex. C).  The Board denied
20  parole for two years (Typewritten Petition, pp. 6-7; Petition, Ex. C,
21  pp. 53-58).

22

23      Petitioner filed a petition for writ of habeas corpus in the
24  Los Angeles County Superior Court, which that court denied in a
25  written opinion (Respondent's Lodgments 1, 2).  Petitioner filed
26  habeas corpus petitions in the California Court of Appeal and the
27  California Supreme Court, which those courts denied summarily
28  (Respondent's Lodgments 3, 4, 5, 6).

                                    2

**PETITIONER'S CONTENTIONS**

Petitioner contends:

1.  The Board's denial of parole allegedly was arbitrary and unsupported by any evidence;

2.  The Board's alleged continued use of Petitioner's commitment offense to deny parole assertedly violates Due Process;

3.  The Board's issuance of a two-year denial following a previous one-year denial allegedly was contrary to statute and Due Process; and

4.  The Board's alleged use of a single statement of reasons in support of both a finding of parole unsuitability and the postponement of an annual suitability review allegedly violated Due Process.[1]

**THE SEPTEMBER 27, 2006 HEARING AND DECISION**

I.  **The Hearing**

The Board incorporated by reference the factual summary of

_____

[1]      The Petition purports to assert an additional claim, referencing Petitioner's "Addendum" (see Form Petition, p. 6). The "Addendum" contains arguments challenging the Los Angeles Superior Court's denial of Petitioner's habeas petition, and arguments supporting Petitioner's other claims, but does not contain any new claim.

3

1 Petitioner's commitment offense contained in the Board's August 2006

2 Report (Petition, Ex. C, p. 9). In that report, the presiding

3 commissioner read into the record the following summary of the

4 commitment offense:

On May 16, 1997, Gutierrez used a knife and abducted victim

Warren Amonodof with the intent of robbing the victim.

Gutierrez used a knife in taking personal property from

victim Warren Amonodof on June 10, 1997 [sic]. Inmate was

in possession of a .25-caliber semiautomatic after having

been previously convicted of a felony. As victim Amonodof

was exiting his vehicle he was approached from behind by the

inmate who place[d] a knife up against his back. The victim

was guided into the apartment building and taken to the

second floor where inmate demanded the victim's money and

ordered the victim to remove his clothing. The victim was

in possession of a .9 millimeter handgun, which the inmate

took. The inmate also took $20 in currency; a watch valued

at $350; a suit valued at $1,000; a 30-dollar wallet; a 40-

dollar shirt; a 60-dollar necktie; a pager valued at $50; a

belt worth $30; a 15-dollar black leather business card

holder; and seven keys valued at $7. During the robbery,

the inmate told the victim, 'I'm going to crack your head

open.' On June 10, 1997, arresting officers observed the

inmate riding a bicycle and attempted to detain him for a

traffic violation. The inmate fled and was observed to

throw a gun over a gate. The gun was recovered and found to

be the one stolen from victim Amonodof. The inmate was

4

1    apprehended and identified by the victim as the person who

2    had robbed him.

3

4    (Petition, Ex. H, pp. 29-31).

5

6        At the September 27, 2006 hearing, Petitioner explained that he

7    committed the offense because he had a bad drug problem and was using

8    heroin (Petition, Ex. C, pp. 10-11).  Petitioner admitted accosting

9    the victim with a knife outside a hotel in order to rob him (id.,

10   pp. 11-12).  Petitioner assertedly saw a police car and moved the

11   victim into the building (id., pp. 11-13).  Petitioner said he took

12   the victim's outer clothes and dropped them by the stairs on his way

13   out of the building because Petitioner was scared the victim might

14   chase Petitioner or beat him up (id., pp. 13-16).  Petitioner

15   allegedly kept the victim's gun, watch and money, and went to get

16   drugs (id., pp. 16-17).  A month later police arrested Petitioner and

17   found the victim's gun (id., pp. 17-18).

18

19       Petitioner had prior convictions for burglary, possession of

20   narcotics, possessing and manufacturing or selling a dangerous weapon,

21   and being under the influence of controlled substances (id., pp. 18-

22   20, 40-41, 54).  Petitioner was arrested for assault with a firearm,

23   which was treated as a probation violation for which Petitioner was

24   returned to prison (id., p. 42).  Petitioner was on probation at the

25   time of the commitment offense (id., p. 46).  Petitioner admitted

26   previous gang affiliations, but said he no longer was associated with

27   a gang (id., pp. 28-30, 38-40).  Petitioner had a tattoo on his

28   stomach which he acquired in prison, and which had caused him to be

5

1    identified as a gang member (id., pp. 29-30). Petitioner denied being

2    involved in the Mexican Mafia, saying he was "nobody," but admitted he

3    knew "a couple of fellas from there" (id., p. 38).

4

5    Petitioner said he began using marijuana at the age of 13 or 14,

6    and admitted he was a "drug addict," but denied being a violent person

7    (id., pp. 23, 49). Petitioner explained his drug addiction "was like

8    an off-and-on thing. Then I would go to jail for a little bit and

9    then come out and be good for a little bit, and then start using again

10   for a little bit and get arrested." (id., p. 22).

11

12   While incarcerated, Petitioner had completed vocational training

13   in graphic arts and printing implementation (id., p. 24). Petitioner

14   had engaged in self-help programs, including Alcoholics Anonymous and

15   Narcotics Anonymous and anger management classes (id., pp. 24-26).

16

17   Petitioner had received three disciplinary violations, including

18   violations for threatening staff and delaying a peace officer in the

19   performance of his duties (id., pp. 26, 46). Petitioner had received

20   six misconduct citations, or "128A's," the most recent in 2004 (id.,

21   p. 26).[2]

22

23   A psychologist's report diagnosed Petitioner with "Polysubstance

24   Dependence in Institutional Remission" (Petition, Ex. E, p. 3). The

25   _____

26   [2]    The California Department of Corrections and

27   Rehabilitation uses counseling "chronos" on Form 128-A to
     record instances of minor misconduct. See Cal. Code Regs.,

28   tit. 15, § 3312(a)(2).

1  psychologist stated that Petitioner's commitment offense "suggests a

2  callousness that is indicative of antisocial behavior" (Petition,

3  Ex. E, p. 4). Noting that there was no "indication of violence in the

4  last few years," the psychologist opined that Petitioner presented a

5  "low to moderate risk of dangerousness while in a controlled setting

6  of the institution" (id.). The psychologist also opined that

7  Petitioner represented a "low-to-moderate risk of dangerousness if

8  released to the community" (id., Ex. E, p. 5; see Ex. C, p. 30). The

9  psychologist also stated that "the most significant risk factor for

10  this inmate is a relapse into the use of drugs and/or alcohol, the

11  loss of employment and/or finances, affiliation with previous criminal

12  associates or estrangement from his family," and that when under the

13  influence of drugs or alcohol, Petitioner was "likely to become

14  impulsive, aggressive and vulnerable to pressures from others" (id.).

15

16      If released, Petitioner planned to live at a drug treatment

17  facility for six months and then move in with his aunt and uncle (id.,

18  pp. 32-34, 51). Petitioner's godfather had offered Petitioner a job

19  (id., pp. 35-36, 51-52). Petitioner had letters of support from

20  family members and his fiancé (id., pp. 36-37).

21

22  II.  **The Board's Decision**

23

24      The Board deemed Petitioner unsuitable for parole. The Board

25  indicated that Petitioner carried out the commitment offense in an

26  "especially cruel and callous manner" demonstrating an

27  "exceptionally[] callous disregard for human suffering" (id., p. 53).

28  The Board stated that Petitioner had abused the victim during the

7

1   offense, and that the motive for the crime, i.e., to obtain money for
2   drugs, was trivial in relation to the offense (id., pp. 53-54).  The
3   Board stated that Petitioner had an unstable social history and prior
4   criminality, including an escalating pattern of criminal conduct (id.,
5   p. 54).  The Board indicated that Petitioner's service of a prior
6   prison term and his failures on probation or parole showed Petitioner
7   had failed to profit from society's previous attempts to correct his
8   criminality (id.).  The Board noted that Petitioner had incurred no
9   disciplinary violations since 2000, but had received a misconduct
10  citation in 2004 for disobeying an order.  The Board also based its
11  decision on the psychologist's report which was "not totally
12  supportive of release" because it indicated Petitioner would present a
13  low to moderate risk of dangerousness if released to the community,
14  and that when under the influence of drugs or alcohol Petitioner was
15  likely to become "impulsive, aggressive, and vulnerable to pressures
16  from others" (id., p. 55).

17
18       In a separate decision, the Board denied parole for two years,
19  based on the commitment offense, Petitioner's increasingly harmful
20  crimes, Petitioner's prison disciplinary history, and the
21  psychologist's report (id., pp. 56-57).

22
23                          **STANDARD OF REVIEW**

24
25       A federal court may not grant an application for writ of habeas
26  corpus on behalf of a person in state custody with respect to any
27  claim that was adjudicated on the merits in state court proceedings
28  unless the adjudication of the claim: (1) "resulted in a decision that

8

1  was contrary to, or involved an unreasonable application of, clearly
2  established Federal law, as determined by the Supreme Court of the
3  United States"; or (2) "resulted in a decision that was based on an
4  unreasonable determination of the facts in light of the evidence
5  presented in the State court proceeding." 28 U.S.C. § 2254(d);
6  Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer, 537
7  U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09 (2000).

8
9      "Clearly established Federal law" refers to the governing legal
10  principle or principles set forth by the Supreme Court at the time the
11  state court renders its decision. Lockyer v. Andrade, 538 U.S. 63
12  (2003). A state court's decision is "contrary to" clearly established
13  Federal law if: (1) it applies a rule that contradicts governing
14  Supreme Court law; or (2) it "confronts a set of facts . . .
15  materially indistinguishable" from a decision of the Supreme Court but
16  reaches a different result. See Early v. Packer, 537 U.S. at 8
17  (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

18
19      Under the "unreasonable application prong" of section 2254(d)(1),
20  a federal court may grant habeas relief "based on the application of a
21  governing legal principle to a set of facts different from those of
22  the case in which the principle was announced." Lockyer v. Andrade,
23  538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537
24  U.S. at 24-26 (state court decision "involves an unreasonable
25  application" of clearly established federal law if it identifies the
26  correct governing Supreme Court law but unreasonably applies the law
27  to the facts). A state court's decision "involves an unreasonable
28  application of [Supreme Court] precedent if the state court either

9

1  unreasonably extends a legal principle from [Supreme Court] precedent

2  to a new context where it should not apply, or unreasonably refuses to

3  extend that principle to a new context where it should apply."

4  Williams v. Taylor, 529 U.S. at 407 (citation omitted).

5

6      "In order for a federal court to find a state court's application

7  of [Supreme Court] precedent 'unreasonable,' the state court's

8  decision must have been more than incorrect or erroneous." Wiggins v.

9  Smith, 539 U.S. 510, 520 (2003) (citation omitted).  "The state

10 court's application must have been 'objectively unreasonable.'" Id.

11 at 520-21 (citation omitted); see also Clark v. Murphy, 331 F.3d 1062,

12 1068 (9th Cir.), cert. denied, 540 U.S. 968 (2003).  In applying these

13 standards, this Court looks to the last reasoned state court decision.

14 See Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  Where

15 no such reasoned opinion exists, as where a state court rejected a

16 claim in an unreasoned order, this Court must conduct an independent

17 review to determine whether the decisions were contrary to, or

18 involved an unreasonable application of, "clearly established" Supreme

19 Court precedent.  See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.

20 2000).

21

22                              **DISCUSSION**

23

24     For the reasons discussed below, the Court should deny and

25 dismiss the Petition with prejudice.

26 ///

27 ///

28 ///

## I.   **Legal Standards**

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) ("Greenholtz"). In some instances, however, states may confer a liberty interest in parole under state law. Id. at 12. Section 3041(b) of the California Penal Code provides, in pertinent part:

> The panel or the board . . . shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

The Ninth Circuit has held that section 3041(b) confers a constitutionally protected liberty interest in parole. Irons v. Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) ("Irons"); Sass v. Calif. Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006) ("Sass");

1  Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003) ("Biggs").[3]

2

3       Due Process requires that there exist "some evidence" to support

4  a parole decision.  Irons, 505 F.3d at 851 ("At the time that Irons'

5  state habeas petition [challenging a 2001 denial of parole] was before

6  the state courts, the Supreme Court had clearly established that a

7  parole board's decision deprives a prisoner of due process . . . if

8  the board's decision is not supported by 'some evidence in the

9  record.'");  see also Sass, 461 F.3d at 1128-29 ("some evidence"

10 standard is "clearly established in the parole context"); Powell v.

11 Gomez, 33 F.3d 39, 40 (9th Cir. 1994); Perveler v. Estelle, 974 F.2d

12 1132, 1134 (9th Cir. 1992); Jancsek v. Oregon Bd. of Parole, 833 F.2d

13 1389, 1390 (9th Cir. 1987) (citing Superintendent, Massachusetts

14 Correctional Institution, Walpole v. Hill, 472 U.S. 445, 455 (1985)).

15 "To determine whether the some evidence standard is met 'does not

16 require examination of the entire record, independent assessment of

17 the credibility of witnesses, or weighing of the evidence.'"  Sass,

18 461 F.3d at 1128 (quoting Superintendent, Massachusetts Correctional

19 Institution, Walpole v. Hill, 472 U.S. at 455-56).  The "some

20 evidence" standard is "minimal," and "'the relevant question is

21 whether there is any evidence in the record that could support the

22 conclusion reached by the [Board].'"  Sass, 461 F.3d at 1128 (quoting

23 _____

      [3]    Although Respondent argues to the contrary, this Court
24 has no authority to disregard the Ninth Circuit's clear holdings,
   in Biggs, Sass, and Irons, that an inmate has a liberty interest
25 in parole.  See Hart v. Massanari, 266 F.3d 1155, 1170 (9th Cir.
   2001) (district judge may not "disagree with his learned
26 colleagues on his own court of appeals who have ruled on a
   controlling legal issue"); Zuniga v. United Can Co., 812 F.2d
27 443, 450 (9th Cir. 1987) ("[d]istrict courts are, of course,
   bound by the law of their own circuit").
28

                                  12

1  <u>Superintendent, Massachusetts Correctional Institution, Walpole v.</u>

2  <u>Hill</u>, 472 U.S. at 455-56; emphasis added).  Evidence that is "meager"

3  or indirect still may support an agency decision under the "some

4  evidence" standard.  See <u>Superintendent v. Hill</u>, 472 U.S. 445, 457

5  (1985).[4]

6

7         State authorities' discretion in parole matters is "great" and

8  "involves the deliberate assessment of a wide variety of

9  individualized factors on a case-by-case basis, and the striking of a

10 balance between the interests of the inmate and the public."  <u>In re</u>

11 <u>Powell</u>, 45 Cal. 3d 894, 902, 248 Cal. Rptr. 431, 755 P.2d 881 (1988)

12 (internal quotations and citation omitted); <u>see also</u> <u>Biggs</u>, 334 F.3d

13 at 915 (California law allows the state authorities "to consider a

14 myriad of factors when weighing the decision of granting or denying

15 parole"); <u>Glauner v. Miller</u>, 184 F.3d 1053, 1055 (9th Cir. 1999)

16 (state authorities have "broad discretion" to determine whether "the

17 necessary [statutory] prerequisites are met") (quoting <u>Board of</u>

18 <u>Pardons v. Allen</u>, 482 U.S. 369, 376 (1987)).

19

20        Under applicable state regulations, in determining suitability

21 for parole in cases such as Petitioner's, the Board shall consider

22 "[a]ll relevant, reliable information available."  Cal. Code Regs.,

23

24        [4]      Respondent's contention that the "some evidence"
   standard does not apply must be rejected.  See <u>Irons</u>, 505 F.3d at
25 851; <u>Sass</u>, 461 F.3d at 1128; <u>see also</u> <u>Washington v. Marshall</u>, 272
   Fed. App'x 634, 635 (9th Cir. 2008) (argument that "some
26 evidence" standard did not apply to parole decisions "foreclosed"
   by <u>McQuillion v. Duncan</u>, 306 F.3d 895, 904 (9th Cir. 2002)
27 <u>supra</u>); <u>Chan v. Kane</u>, 272 Fed. App'x 632, 633 (9th Cir. 2008)
   (deeming argument that "some evidence" standard did not apply to
28 parole decisions "foreclosed" by <u>Biggs</u>).

1  tit. 15, §§ 2281(c), (d).  The regulations describe certain

2  circumstances tending to show unsuitability or suitability for parole,

3  described as "general guidelines," but also state that the importance

4  of any circumstances or combination of circumstances in a particular

5  case is left to the judgment of the Board.  Cal. Code Regs., tit. 15,

6  §§ 2281(c), (d).  The Board may consider, <u>inter alia</u>, "the

7  circumstances of the prisoner's: social history; past and present

8  mental state; past criminal history, including involvement in other

9  criminal misconduct which is reliably documented; the base and other

10  commitment offenses, including behavior before, during and after the

11  crime; past and present attitude toward the crime; any conditions of

12  treatment or control, including the use of special conditions under

13  which the prisoner may safely be released to the community; and any

14  other information which bears on the prisoner's suitability for

15  release."  Cal. Code Regs., tit. 15, § 2281(b) (2007).

16

17      Circumstances tending to indicate unsuitability include:

18

19      (1) Commitment Offense.  The prisoner committed the offense

20      in an especially heinous, atrocious or cruel manner.  The

21      factors to be considered include:

22

23      (A) Multiple victims were attacked, injured or killed in the

24      same or separate incidents.

25

26      (B) The offense was carried out in a dispassionate and

27      calculated manner, such as an execution-style murder.

28  ///

14

(C) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

1   Cal. Code Regs., tit. 15, § 2281(c).

2

3       Circumstances tending to indicate suitability include:

4

5       (1) No Juvenile Record.  The prisoner does not have a record

6       of assaulting others as a juvenile or committing crimes with

7       a potential of personal harm to victims.

8

9       (2) Stable Social History.  The prisoner has experienced

10      reasonably stable relationships with others.

11

12      (3) Signs of Remorse.  The prisoner performed acts which

13      tend to indicate the presence of remorse, such as attempting

14      to repair the damage, seeking help for or relieving

15      suffering of the victim, or the prisoner has given

16      indications that he understands the nature and magnitude of

17      the offense.

18

19      (4) Motivation for Crime.  The prisoner committed his crime

20      as the result of significant stress in his life, especially

21      if the stress had built over a long period of time.

22

23      (5) Battered Woman Syndrome.  At the time of the commission

24      of the crime, the prisoner suffered from Battered Woman

25      Syndrome, as defined in section 2000(b), and it appears the

26      criminal behavior was the result of that victimization.

27   ///

28   ///

1  provided "some evidence" supporting the Board's decision (<u>id.</u>, p. 2).

2

3      Under the "some evidence" test, the issue is not whether the

4  evidence supported any particular factor regarding parole suitability,

5  but rather whether "some evidence" indicates the prisoner's release

6  unreasonably would endanger public safety.  <u>See</u> <u>Castro v. Adams</u>, 2008

7  WL 2490401, at *5 (E.D. Cal. June 16, 2008), <u>adopted</u>, 2008 WL 3839105

8  (E.D. Cal. Aug. 15, 2008); <u>Hudson v. Curry</u>, 2008 WL 1766773, at *4

9  (N.D. Cal. Apr. 15, 2008); <u>see also</u> <u>In re Lawrence</u>, 44 Cal. 4th 1181,

10 1205, 1212, 82 Cal. Rptr. 3d 169, 190 P.3d 535 (2008) ("<u>Lawrence</u>")

11 ("the relevant inquiry is whether some evidence supports the *decision*

12 of the Board . . . that the inmate constitutes a current threat to

13 public safety, and not merely whether some evidence confirms the

14 existence of certain factual findings") (citations omitted; original

15 emphasis).

16

17      The evidence before the Board, including the circumstances of the

18 commitment offense, Petitioner's criminal history, Petitioner's

19 history of substance abuse, Petitioner's disciplinary history, and the

20 psychologist's report opining that Petitioner could pose as much as a

21 "moderate" risk to the community if released,[5] provided "some

22 evidence" that Petitioner's release unreasonably would endanger public

23 safety.  <u>See</u> <u>Wauls v. Muntz</u>, 256 Fed. App'x 106, 107 (9th Cir. 2007)

24 (nature of commitment offense, criminal history, and disciplinary

25

26 _____

27      [5]   In psychological terms, "moderate" does not mean
   "average," but rather is defined as the mid-point between "mild"
   and "severe."  <u>Leitch v. Marshall</u>, 2008 WL 2001941, at * 8 (C.D.

28 Cal. May 7, 2008) (citation omitted).

1 history sufficient); <u>Hernandez v. Perez</u>, 256 Fed. App'x 108, 109 (9th
2 Cir. 2007) (pre-incarceration factors, including commitment offense,
3 and prison disciplinary record sufficient); <u>Rosas v. Nielsen</u>, 428 F.3d
4 1229, 1232-33 (9th Cir. 2005) (circumstances of commitment offense
5 along with psychiatric reports showing petitioner had failed to
6 complete necessary programming while in prison sufficient); <u>Leitch v.</u>
7 <u>Marshall</u>, 2008 WL 2001941, at 7-9 (C.D. Cal. May 7, 2008) (commitment
8 offense, escalating pattern of criminal violence, unstable social
9 history and psychologist's report indicating petitioner posed a
10 "moderate" risk of engaging in violent behavior in the community
11 sufficient); <u>Martin v. Ornoski</u>, 2008 WL 1808517, at *3-5 (N.D. Cal.
12 Apr. 22, 2008) (commitment offense and prison disciplinary history
13 sufficient); <u>Burnight v. Carey</u>, 2007 WL 3231583, at *3 & n.1 (E.D.
14 Cal. Oct. 30, 2007), <u>adopted</u>, 2008 WL 275694 (E.D. Cal. Jan. 31, 2008)
15 (nature of commitment offense and triviality of motive sufficient).
16
17     In <u>Lawrence</u>, <u>supra</u>, the California Supreme Court recently
18 concluded that "the aggravated nature of the crime does not in and of
19 itself provide some evidence of <u>current</u> dangerousness to the public
20 unless the record also establishes that something in the prisoner's
21 pre- or post-incarceration history, or his or her current demeanor or
22 mental state, indicates that the implications regarding the prisoner's
23 dangerousness that derive from his or her commission of the commitment
24 offense remain probative to the statutory determination of a
25 continuing threat to public safety." <u>Lawrence</u>, 44 Cal. 4th at 1214.
26 <u>Lawrence</u> has no impact on the present case. In addition to the
27 commitment offense, Petitioner's previous failures on probation, his
28 prison disciplinary history, and the psychologist's report all

1  supported the conclusion that, despite other arguably positive

2  factors, Petitioner still posed a continuing risk of danger to the

3  public if released.  See In re Shaputis, 44 Cal. 4th 1241, 1259-61, 82

4  Cal. Rptr. 3d 213, 190 P.2d 573 (2008) ("Shaputis") (the companion

5  case to Lawrence) (nature of commitment offense and Petitioner's lack

6  of insight into the murder and years of domestic violence which

7  preceded the murder sufficient).

8

9       Petitioner argues that the Board should have weighed more heavily

10  arguably positive factors.  However, this Court cannot re-weigh the

11  factors supporting parole suitability and the factors supporting

12  parole unsuitability.  See Chichil v. Kane, 255 Fed. App'x 194, 194

13  (9th Cir. 2007) ("the 'some evidence' standard does not allow us to

14  reweigh the evidence before the Board"); Crawley v. Knowles, 235 Fed.

15  App'x 563, 564 (9th Cir. 2007) ("The 'some evidence' standard does not

16  allow us to entertain Crawley's contentions regarding how the Board

17  evaluated the evidence it had before it when it made its suitability

18  determination. [citation]."); Powell v. Gomez, 33 F.3d 39, 42 (9th

19  Cir. 1994); Countryman v. Stokes, 2008 WL 1335934, at *11 (C.D. Cal.

20  Apr. 8, 2008); Collier v. Dexter, 2008 WL 816688, at *12 (C.D. Cal.

21  Mar. 25, 2008); see also In re Shaputis, 44 Cal. 4th at 1260-61

22  (although it might be reasonable to conclude that petitioner's many

23  years of sobriety, advanced age and health problems suggested he would

24  never again consume alcohol and engage in criminal conduct, court

25  cannot reweigh the evidence as long as the record shows "due

26  consideration of the specified factors as applied to the individual

27  prisoner in accordance with applicable legal standards") (original

28  emphasis).  Moreover, even if the Board made some insupportable

1  findings, the Court nevertheless must deny habeas relief where, as

2  here, there exists "some evidence" supporting the Board's finding of

3  unsuitability.  See Biggs, 334 F.3d at 916.[6]

4

5      In sum, the Board's decision was amply supported by "some

6  evidence," and hence the Board did not act arbitrarily in denying

7  parole.  It follows that the state courts' rejection of this claim was

8  not contrary to, or an objectively unreasonable application of, any

9  clearly established Federal law as determined by the United States

10 Supreme Court.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled

11 to habeas relief on this claim.

12

13 **III.  Petitioner Is Not Entitled to Habeas Relief on His Claim that the**

14 **Board's Alleged Continued Reliance on the Facts of Petitioner's**

15 **Commitment Offense Violated Due Process.**

16

17     Petitioner contends the Board's alleged continued reliance on

18 immutable factors such as the commitment offense and pre-offense

19 conduct violated Due Process, citing, inter alia, Biggs (Pet. Mem.,

20 pp. 24-34).  Petitioner raised this claim in his Superior Court habeas

21 petition, but the Superior Court did not address the claim expressly

22 in denying relief (see Respondent's Lodgment 1, pp. 24-34;

23 Respondent's Lodgment 2).

24  ———————————

25     [6]   To the extent Petitioner contends the Board violated
   state law or regulations, Petitioner is not entitled to habeas
26 relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Chan
   v. Kane, 272 Fed. App'x 632, 633-34 (9th Cir. 2008) ("Chan's
27 contentions that the Board's decision violated California parole
   law are questions of state law that we will not review here")
28 (citations omitted).

1   In dicta, the Biggs court stated:

2

3       Over time, however, should Biggs continue to demonstrate

4       exemplary behavior and evidence of rehabilitation, denying

5       him a parole date simply because of the nature of Biggs'

6       offense and prior conduct would raise serious questions

7       involving his liberty interest in parole. . . .

8

9       . . . A continued reliance in the future on an

10      unchanging factor, the circumstance of the offense and

11      conduct prior to imprisonment, runs contrary to the

12      rehabilitative goals espoused by the prison system and could

13      result in a due process violation.

14

15  Biggs, 334 F.3d at 916-17 (emphasis added).

16

17      As previously indicated, the Board did not rely solely on

18  immutable factors to deem Petitioner unsuitable for parole, but also

19  based its decision on other factors, such as Petitioner's prison

20  disciplinary history and the psychologist's report indicating

21  Petitioner could pose as much as a "moderate" risk of danger to the

22  public if released.  Therefore, the Biggs dicta would be inapplicable

23  even if it were otherwise persuasive or authoritative.  See Chan v.

24  Kane, 272 Fed. App'x 632, 633 (9th Cir. 2008) (rejecting claim that

25  Board relied only on commitment offense and other unchanging factors,

26  where record showed Board also relied on petitioner's failure to

27  participate in self-help programming and his insufficient parole

28  plans); Withers v. Finn, 2007 WL 2729078, at *6 (E.D. Cal. Sept. 18,

1 | 2007), adopted, 2007 WL 3293378 (E.D. Cal. Nov. 5, 2007)

2 | (distinguishing Biggs where denial of parole additionally was based on

3 | petitioner's inadequate parole plans, and thus was not based "solely

4 | on immutable factors") (original emphasis); Rose v. Kane, 2006 WL

5 | 3251735, at *11 (N.D. Cal. Nov. 2, 2006), aff'd, 270 Fed. App'x 610

6 | (9th Cir. 2008) (Biggs dicta inapplicable where Board did not base

7 | denial solely on gravity of commitment offense, but also relied on

8 | fact that petitioner needed more self-help and therapy).

9 |

10 |     For these reasons, the state courts' rejection of this claim was

11 | not contrary to, or an objectively unreasonable application of, any

12 | clearly established Federal law as determined by the United States

13 | Supreme Court.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled

14 | to habeas relief on this claim.

15 |

16 | **IV.**  **Petitioner's Claim that the Board Acted Arbitrarily in Denying**

17 |     **Parole for Two Years Does Not Merit Habeas Relief.**

18 |

19 |     Petitioner contends that the Board's two-year denial following

20 | the August 2005 issuance of a one-year denial was arbitrary,

21 | assertedly in violation of Due Process (Pet. Mem., pp. 35-37).[7]

22 | According to Petitioner, the August 2005 Board told Petitioner that

23 | the psychologist's report was favorable, and that Petitioner was

24 |

25 |     [7]    To the extent Petitioner contends the Board's procedure

26 | violated state law, Petitioner is not entitled to habeas relief.
    See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Chan v. Kane,

27 | 272 Fed. App'x at 633-34 ("Chan's contentions that the Board's
    decision violated California parole law are questions of state

28 | law that we will not review here") (citations omitted).

1  "definitely on [his] way," but that the Board "need[ed] to see a
2  longer history of behavior" such as that which Petitioner had been
3  demonstrating for the past five years (Pet. Mem., p. 35; see Pet.
4  Ex. H, p. 98).  Petitioner also quotes remarks of the deputy district
5  attorney at the August 2005 hearing stating, inter alia, that
6  Petitioner had "turned a corner" (Pet. Mem., pp. 35-36; see Pet.
7  Ex. H, p. 88).[8]

8

9      Petitioner contends that, although Petitioner assertedly had an
10  "exemplary, 'unblemished' record," the September 27, 2006 Board told
11  Petitioner that his "good things" had not "balanced out" his crime,
12  and that he would have to prove himself (Pet. Mem., p. 36; see
13  Petition Ex. C, p. 57).  According to Petitioner, the State's parole
14  statutes do not permit the Board to defer setting a parole date year
15  after year where Petitioner has assertedly "met the statutory
16  prerequisite of low parole risk to public safety . . . ."  (Pet. Mem.,
17  p. 37).  The Superior Court rejected Petitioner's contentions, ruling
18  that the Board articulated sufficient reasons to justify a two-year
19  denial (see Petition, Ex. L, p. 2).

20

21      The version of California Penal Code section 3041.5 in existence
22  at the time of the Board's September 27, 2006 decision required the
23  Board, following a denial of parole, to hear the case annually
24  thereafter, except that the Board could issue a two-year denial if the

25  _____

26      [8]    The transcript shows that, in recommending a denial of
    parole, the deputy district attorney said: "Overall, however, I
27  think that [Petitioner] has demonstrated that he has turned a
    corner, but whether these [sic] can be maintained long term is
28  the question" (Pet. Ex. H, p. 88).

Board found that it was "not reasonable to expect that parole would be granted at a hearing during the following year and state[d] the bases for the finding."  Former Cal. Penal Code § 3041.5(b)(1)(A).[9]  The statute did not require the Board to find any significant change in circumstances before ordering a two-year denial following a previous one-year denial.  See In re Lugo, 164 Cal. App. 4th 1522, 80 Cal. Rptr. 3d 521 (2008).

> There are a variety of situations in which the issuance of a
> multi-year denial following a one-year denial might be
> appropriate despite the lack of any significant change in
> circumstances.  For example, at an earlier hearing at which
> the Board issued a one-year denial, there might have been
> evidence to support a multi-year denial but the Board
> exercised its discretion not to issue a multi-year denial.
> Nothing in the applicable statute *requires* the Board to
> issue a multi-year denial if justified by the evidence.
> [citation].  Stated differently, a one-year denial does not
> necessarily reflect an affirmative finding by the Board that
> it is reasonable to believe parole will be granted in one
> year.

> Another situation in which it might be appropriate to
> issue a multi-year denial following a one-year denial is a

---

[9]   On November 4, 2008, California voters approved Proposition 9, which amends California Penal Code section 3041.5 to permit the Board to defer subsequent parole consideration hearings for longer periods than those provided in the former statute.

1     case in which a panel of the Board concludes that the

2     previous panel was mistaken in issuing only a one-year

3     denial.  Different decision-makers may exercise their

4     discretion in different ways, but that does not mean their

5     decisions are necessarily arbitrary or lacking in

6     evidentiary support.  A panel's discretion cannot be

7     tethered to the discretionary decision of a prior panel.

8

9     Id. at 1538-39 (footnote omitted; original emphasis).

10

11        Therefore, "it is completely within the Board's discretion to

12    issue a multi-year denial following a one-year denial even if no

13    significant change in circumstances has occurred, so long as at least

14    some evidence supports the decision."  Id. at 1538.

15

16        In Petitioner's case, the September 27, 2006 Board issued a two-

17    year denial based on the commitment offense, Petitioner's criminal

18    history, Petitioner's disciplinary history, and a new psychological

19    report, prepared on June 27, 2006 (after the August 2005 denial) that

20    "was basically not supportive of release" (Pet. Ex. C, pp. 56-57).

21    For the reasons discussed in Section II above, the record provided

22    "some evidence" supporting the Board's determination that a two-year

23    denial was warranted.  There existed "some evidence" it was not

24    reasonable to expect that, in a year, the Board would find that

25    Petitioner (whom the psychologist said presented a "low to moderate

26    risk of danger" to the community if released) no longer would present

27    any unreasonable risk of danger to public safety.  Therefore, the

28    Board did not act arbitrarily in issuing a two-year denial.

1    For these reasons, the state courts' rejection of this claim was

2 not contrary to, or an objectively unreasonable application of, any

3 clearly established Federal law as determined by the United States

4 Supreme Court.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled

5 to habeas relief on this claim.

6

7 **V.**    **Petitioner's Claim that the Board Improperly Used a Single**

8       **Statement of Reasons Both to Justify the Unsuitability Finding**

9       **and the Two-Year Denial Does Not Merit Habeas Relief.**

10

11    As indicated above, the version of California Penal Code section

12 3041.5 applicable at the time of the Board's September 27, 2006 denial

13 authorized the Board to issue a two-year denial if the Board found

14 that it was "not reasonable to expect that parole would be granted at

15 a hearing during the following year and state[d] the bases for the

16 finding."  Former Cal. Penal Code § 3041.5(b)(1)(A).  Petitioner

17 contends the Board allegedly violated the statute because its decision

18 assertedly "contained only a single statement of reasons in support of

19 the unsuitability finding and the postponement" (Pet. Mem., p. 38).

20 Petitioner contends the Board recited the same factors to support both

21 its unsuitability finding and the two-year denial (id.).

22

23    Petitioner raised this claim in his Superior Court habeas

24 petition (see Respondent's Lodgment 1).  Although the Superior Court

25 did not expressly discuss the issue whether a Board panel could issue

26 a two-year denial after a prior panel had issued a one-year denial,

27 the Superior Court ruled that the Board's reasons for the two-year

28 denial were sufficient (Respondent's Lodgment 2, p. 2).

1   Petitioner's assertions that the Board violated state law do not

2   entitle Petitioner to habeas relief.  See Estelle v. McGuire, 502 U.S.

3   62, 67-68 (1991); Chan v. Kane, 272 Fed. App'x at 633-34 ("Chan's

4   contentions that the Board's decision violated California parole law

5   are questions of state law that we will not review here") (citations

6   omitted).

7

8   In any event, no state law error occurred.  The Board expressly

9   stated: "In a separate decision the hearing panel finds that it is not

10  reasonable to expect that parole would be granted at a hearing during

11  the following two years" (Pet. Ex. C, p. 56).  Although the Board

12  based that decision on virtually the same factors as its decision

13  deeming Petitioner unsuitable for parole, such a procedure does not

14  violate California law.  "The Board's decision to defer annual parole

15  consideration hearings is guided by the same criteria used to

16  determine parole suitability."  In re Lugo, 164 Cal. App. 4th at 1537

17  (citations omitted); see Cal. Code Regs. tit. 15, § 2270(d) ("In cases

18  in which the panel may deny a subsequent parole hearing for more than

19  one year, it shall utilize the criteria specified in sections 2281 or

20  2401 as applicable.").[10]  "The reasons for postponing the next

21  scheduled parole hearing need not be completely different from the

22  reasons for denying parole suitability."  In re Lugo, 164 Cal. App.

23  4th at 1537 (citation omitted).  "Rather, the only requirement is an

24  identification of the reasons that justify postponement."  Id.

25

26      [10]    Section 2402 of Title 15, California Code of
        Regulations, sets forth suitability and unsuitability criteria
27  for inmates who committed murder on or after November 8, 1978 or
        specified attempted murders.  Section 2281, described above,
28  applies to other life prisoners, including Petitioner.

1   (citations omitted); <u>see also</u> <u>In re Burns</u>, 136 Cal. App. 4th 1318,

2   1326 & n.3, 40 Cal. Rptr. 3d 1 (2006), <u>abrogated on other grounds</u>, <u>In</u>

3   <u>re Lawrence</u>, 44 Cal. 4th 1181, 82 Cal. Rptr. 3d 169, 190 P.3d 535

4   (2008) (rejecting contention that the "[r]easons for deferring the

5   next hearing must be different from those for denying parole");

6   <u>Fredericks v. Finn</u>, 2007 WL 4526514, at *10 (E.D. Cal. Dec. 19, 2007)

7   (citations omitted), <u>adopted</u>, 2008 WL 275693 (E.D. Cal. Jan. 31, 2008)

8   ("because there is some evidence to support the denial of parole,

9   petitioner's compliance with the recommendations of earlier panels

10   does not render the decision arbitrary"); <u>Sesma v. Hernandez</u>, 2007 WL

11   3243853, at *14 (S.D. Cal. Oct. 30, 2007) ("a [Board] panel may issue

12   a two-year denial based on the same factors as it based suitability as

13   long as it is clear from the record that the issue was considered

14   separately"). The Board satisfied the requirements of Section

15   3041.5(b)(1)(A) by stating expressly and in a separate opinion the

16   bases for the two-year denial.

17

18      Therefore, the state courts' rejection of this claim was not

19   contrary to, or an objectively unreasonable application of, any

20   clearly established Federal law as determined by the United States

21   Supreme Court. <u>See</u> 28 U.S.C. § 2254(d). Petitioner is not entitled

22   to habeas relief on this claim.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.